**SO ORDERED.**

**SIGNED this 16 day of December, 2019.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-00298-5-DMW |
| KEITH DOUGLAS MEDLIN | |
| | CHAPTER 13 |
| DEBTOR | |

| | |
|---|---|
| JANET BEABOUT and VIVIAN HUMPHREY | |
| PLAINTIFFS | |
| vs. | ADVERSARY PROCEEDING NO. |
| KEITH DOUGLAS MEDLIN | 19-00063-5-DMW |
| DEFENDANT | |

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

This matter comes before the court upon the Pre-Answer Motion to Dismiss ("Motion to Dismiss") filed by Keith Douglas Medlin ("Defendant") on July 1, 2019 and the Opposition filed by Janet Beabout ("Ms. Beabout") and Vivian Humphrey ("Ms. Humprey") (collectively "Plaintiffs") on July 16, 2019. The court conducted a hearing on August 20, 2019 in Raleigh, North Carolina. Cort I. Walker, Esq. appeared for the Defendant, and Todd A. Jones, Esq. appeared for the Plaintiffs. At the conclusion of the hearing, the court took the matter under

advisement. Based upon further consideration of the pleadings and the arguments of counsel made in memoranda and at the hearing, the court grants the Motion to Dismiss for reasons set forth herein.

## STATEMENT OF THE PROCEEDING

On January 24, 2019, the Defendant filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code,[1] and the court issued a Notice of Chapter 13 Bankruptcy Case which established April 26, 2019 as the deadline for filing a complaint to challenge dischargeability of certain debts, specifically any particular debt that a creditor wants excepted from discharge under § 523(a)(2) or (4).

The Defendant did not schedule either of the Plaintiffs as a creditor in his bankruptcy case. On April 1, 2019, each of the Plaintiffs filed a proof of claim for the unsecured amount of $82,500.00, with the bases for the claims being stated as "Breach of Contract, Fraud."[2] On October 22, 2019, the Defendant filed two Objections to Claim, objecting to the claims filed by Ms. Beabout and Ms. Humphrey, respectively. In the Objections, the Defendant notes that the Plaintiffs did not attach any supporting documentation to their proofs of claim. The Defendant denies that any contract existed between him and either of the Plaintiffs that would legally obligate him to pay each of them $82,500.00, and he denies that he committed fraud that would legally obligate him to pay each of them $82,500.00.

On April 26, 2019, the Plaintiffs initiated this adversary proceeding by filing a Complaint against the Defendant, seeking a judgment that the Defendant is liable to the Plaintiffs for $160,000.00, and that the debt is nondischargeable. The Defendant filed an initial Pre-Answer

---

[1] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[2] Ms. Beabout's proof of claim is docketed as Claim 8-1, and Ms. Humphrey's proof of claim is docketed as Claim 9-1.

Motion to Dismiss ("First Motion to Dismiss") on May 29, 2019.  Subsequently, on June 17, 2019, the Plaintiffs filed an Amended Complaint, rendering the First Motion to Dismiss moot.  On July 1, 2019, the Defendant filed the Motion to Dismiss currently before the court, requesting dismissal of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

STANDARD OF CONSIDERATION

Rule 8 of the Federal Rules of Civil Procedure[4] requires that a pleading that states a claim for relief, usually a complaint, must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides a defense to a pleaded claim for relief for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) request to dismiss "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006); *E. Shores Mkts., Inc. v. J.D. Assocs. Ltd. P'Ship*, 213 F.3d 175, 180 (4th Cir. 2000)).  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain enough factual allegations that, when accepted as true, "state a claim to relief that is

---

[3] Made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.
[4] Made applicable to adversary proceedings by Rule 7008 of the Federal Rules of Bankruptcy Procedure.

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In summary, allegations cannot be speculative and must cross "the line between the conclusory and the factual." *Twombly*, 550 U.S. at 557 n. 5.

PLAINTIFFS' FACTUAL ALLEGATIONS[5]

The Defendant and Wendy Oglesby ("Ms. Oglesby") were married from October 27, 1990 until April 17, 2015, when they obtained a divorce. Ms. Oglesby is the daughter of Ms. Beabout and the niece of Ms. Humphrey.

The Defendant was the sole member and manager of M&J Enterprises of Cary, LLC ("M&J"), which operated a Monkey Joe's[6] franchise. In or around November 2014, M&J ceased operating its business, and the North Carolina Secretary of State administratively dissolved M&J on January 14, 2016.

In February 2008, M&J executed a United States Small Business Administration promissory note ("Note") in favor of American Business Lending, Inc. ("ABL") for the original principal amount of $555,000.00.[7] The Defendant, Ms. Oglesby, and the Minnie B. Dean Trust ("Trust") each guaranteed M&J's payment of the Note.[8] The Note was secured by a Deed of Trust executed by Minnie B. Dean, as trustee for the Trust, encumbering real property located at 258 Ocean Boulevard West, Holden Beach, North Carolina ("Beach Property"). At the time the Deed

---

[5] The Defendant has not yet responded by answer to the Amended Complaint, and for purposes of the Motion to Dismiss, the court must assume as true all factual allegations and view them in the light most favorable to the Plaintiff.

[6] Monkey Joe's is a children's indoor recreational and entertainment center.

[7] The Amended Complaint alleges the principal amount as $550,000.00; however, the court believes this is a typo.

[8] The Amended Complaint does not allege expressly that the Defendant, Ms. Oglesby, and the Trust guaranteed payment of the Note; however, this allegation is implied from other allegations contained within the Amended Complaint.

of Trust was executed, the Trust owned the Beach Property. The Plaintiffs are successor trustees for the Trust.

In or around May 2013, M&J executed a modification agreement ("Modification Agreement") which extended the Note's maturity date by three years and reduced the monthly payment amount. The Defendant forged Ms. Ogleby's signature upon the Modification Agreement without the knowledge or consent of Ms. Olgesby or the Plaintiffs. The Beach Property continued serving as collateral for the Note.

In or around February 2015, ABL initiated foreclosure proceedings against the Beach Property. On or about April 3, 2015, the Plaintiffs, individually and as successor trustees to the Trust, entered into a settlement agreement with ABL, whereby ABL agreed to dismiss the foreclosure proceedings and release its lien on the Beach Property in exchange for payment of $160,000.00. Ms. Beabout and Ms. Humphrey each paid $80,000.00 to fund the payment to ABL. After receipt of $160,000.00 from the Plaintiffs, ABL canceled the Deed of Trust on the Beach Property; however, over $80,000.00 remained due under the Note.

After their divorce, the Defendant and Ms. Oglesby began negotiating division of their marital property. The Defendant refused to enter into a property settlement agreement unless the Plaintiffs and the Trust waived and released any claims they may have against the Defendant or M&J arising out of the Note. The Plaintiffs, individually and as successor trustees of the Trust, agreed to execute an appropriate waiver and release of the claims.

On or about November 12, 2015, the Defendant and Ms. Oglesby entered into a Property Settlement Contract ("Contract") which addresses M&J and the Note as follows:

> <u>Keith's Business Interest</u>.  The parties agree that Keith is the registered agent for M&J Enterprises of Cary, LLC which, along with Keith, was assigned a Monkey Joes [sic] Franchise and the use of certain licenses needed to operate a Monkey Joe's Franchise. (collectively referred to as "Monkey Joe's"). Monkey Joe's owned

5

> and operated a physical location. Keith shall have as his sole and separate property all right, title and interest in Monkey Joe's as well as any and all other business interests or corporations that Keith may be involved with. Wendy hereby waives and releases any and all right and interest she has to Monkey Joe's and any and all other business interests that Keith has an ownership interest in or is otherwise involved with.
>
> Wendy shall cooperate with the execution of any necessary legal documents to effectuate this transfer. Keith shall be solely responsible for any and all debts, liabilities and expenses associated with Monkey Joe's and any other business that he has ownership interest in or is otherwise involved with and shall indemnify and hold Wendy harmless therefrom. This includes any and all pending and/or future lawsuits that have been or may be filed against the companies listed herein. This shall operate to shield Wendy from any and all liability associated with any pending, past or future lawsuits that may be filed against Keith and/or any of the business interests referenced in this Agreement.
>
> Also, the parties acknowledge that a loan was taken with American Business Lending in the amount of $555,000 for the benefit of Monkey Joe's. The aggregate balance of the loan on February 15, 2015 was $231,691.51. The loan was guaranteed by Keith, Wendy and the Minnie B. Dean Trust. Upon default of the terms and conditions of the loan by M&J Enterprises of Cary, LLC, Keith, and Wendy demand was made to the Minnie B. Dean Trust to collect on the note. Janet Dean Beabout and Vivian Dean Humphrey (Wendy's mother and aunt) individually and on behalf of the Minnie B. Dean Trust paid the balance of the loan after negotiating a settlement in the amount of $160,000.00. Janet Dean Beabout, Vivian Dean Humphrey, and the Minnie B. Dean Trust have agreed to waive and release both Keith and Wendy from any liability on that amount that was paid for by them and agree, as third party beneficiaries of this contract, to not pursue any legal action of any sort against either Keith, Wendy, and M&J Enterprises of Cary, LLC (see attached exhibit A).

A Waiver/Release was executed by Ms. Beabout and Ms. Humphrey, individually, and by Ms. Beabout and Ms. Humphrey as successor trustees for the Trust. The Waiver/Release is attached to the Contract as "Exhibit A" and reads as follows:

> For good and valuable consideration the sufficiency of which is hereby acknowledged, Jean Dean Beabout, Vivian Dean Humphrey, and the Minnie B. Dean Trust (guarantors) hereby waives [sic] any claims and releases [sic] Wendy Medlin, Keith Medlin, M&J Enterprises of Cary, LLC their heirs, successors, assigns, and agents from any and all claims, demands, costs. liabilities, actions, and causes of action of every nature whether in law or in equity known or unknown, suspected or unsuspected, which guarantors ever had or now has, against Wendy Medlin, Keith Medlin, and M&J Enterprises of Cary, LLC.

6

The Defendant breached his obligations under the Contract by refusing or otherwise failing to pay the remaining amount due under the Note in excess of $80,000.00[9] and to indemnify Ms. Oglesby from liability on the outstanding amounts owed on the Note.[10]

## DISCUSSION

### Relief Sought

The court begins by noting that the Amended Complaint, even as a second attempt, lacks clarity and specificity. The first paragraph states that "[t]his is an adversary proceeding to determine the dischargeability of a debt pursuant to Rule 4007[11] and 7001(6)[12] of the Federal Rules of Bankruptcy Procedure and Section 523(c)[13] of the Bankruptcy Code." The Amended Complaint contains two stated claims for relief: Count I – Fraud and Count II – Breach of Contract. These two claims for relief allege, respectively, that the Plaintiffs have been damaged in the amount of $160,000.00 as a direct and proximate cause of the Defendant's active concealment of material facts and misrepresentations in connection with his alleged forgery of the Modification Agreement and alleged inducement of the Plaintiffs to sign the Waiver and as a direct and proximate cause of the Defendant's breach of the Contract.

The Amended Complaint does not contain a claim for relief setting forth the basis for nondischargeability of the alleged debt of $160,000.00 owed by the Defendant to the Plaintiffs. Instead, the prayer for relief states simply that the "Plaintiffs pray this court for an Order

---

[9] On July 19, 2019, the United States Small Business Administration filed a proof of claim in the Defendant's bankruptcy case for $81,364.62 due under the Note.

[10] The Amended Complaint does not include an allegation that Ms. Oglesby has paid any amount due under the Note.

[11] This rule sets forth the procedures for "Determination Of Dischargeability Of A Debt."

[12] An adversary proceeding includes "a proceeding to determine the dischargeability of a debt." Fed. R. Bankr. P. 7001(6).

[13] This subsection provides that a debtor shall be discharged from a debt of a kind specified in § 523(a)(2), (4), or (6) unless, on request of the creditor to whom such debt is owed, the court determines such debt to be excepted from discharge under § 523(a)(2), (4), or (6).

determining the debt to be nondischargeable and for a judgment against the Debtor/Defendant in the principal sum of One Hundred and Sixty Thousand Dollars and No Cents ($160,000.00) plus such other and further relief as the Court may deem just and proper."

The Plaintiffs' arguments made in their Opposition to the Motion to Dismiss and at the hearing clarify that the Plaintiffs seek a determination that the Defendant is liable to each of Ms. Beabout and Ms. Humprey for the amount of $80,000.00, the amount paid by each of them on the Note, and that those debts are nondischargeable pursuant to § 523(a)(2)(A). Although the Amended Complaint does not specifically request relief under this subsection, the court will consider whether through the factual allegations contained in the Amended Complaint, the Plaintiffs have presented a claim for relief under § 523(a)(2)(A) that survives the Motion to Dismiss.

## Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## § 523(a)(2)(A)

Upon a Chapter 13 debtor's completion of all payments required under a confirmed plan, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under § 502 of this title with certain exceptions, including a debt of the kind specified in § 523(a)(1)(B), (1)(C), (2), (3), (4), (5), (8), or (9). 11 U.S.C. § 1328(a)(2). The Plaintiffs are seeking relief under § 523(a)(2)(A), which excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

### *Existence of a Debt*

The threshold element for consideration is whether a debt owed by the Defendant to the Plaintiffs exists. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). In turn, the definition of "claim" includes "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

Each of the Plaintiffs filed a proof of claim in the Defendant's bankruptcy case for $82,500.00, which amount presumably includes the $80,000.00 paid by each Plaintiff toward the Note. A creditor's "proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The Defendant objected to each of the Plaintiffs' claims, and a hearing is scheduled on the objections for January 8, 2020, at which time the Defendant may present evidence to rebut the claims' presumptive validity. *See Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004)   Despite the pending objections, the court finds that the Amended Complaint pleads adequately the existence of debts owed by the Defendant to the Plaintiffs in the collective amount of $160,000.00.

### *Obtaining of the Debt*

An essential requirement for nondischargeability under § 523(a)(2)(A) is that the debtor *obtain* money, property, or services, or an extension, renewal, or refinancing of credit as a result of false pretenses, false representation, or actual fraud. In interpreting this subsection, the United States Court of Appeals for the Fourth Circuit found that—

> [i]t is clear from the structure of the phrase that "to the extent obtained" modifies the money, property, services, or credit that constitutes the debt. A plain reading of this subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services or credit. Structurally, the subsection can have no other meaning.

*Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007).

The Plaintiffs argue that the Defendant's forging of Ms. Oglesby's signature on the Modification Agreement constituted actual fraud that resulted in him obtaining an extension, renewal, or refinancing of credit from ABL. The Plaintiffs contend that the alleged debts owed to them are a direct and proximate result of this fraud, noting that the United States Supreme Court holds that "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998).

The Plaintiffs speculate that but for the Defendant obtaining an extension of the Note's maturity through the forged Modification Agreement, M&J would have defaulted on the Note while its business was still operational, and the Note could have been satisfied through a liquidation of business assets, rather than foreclosure of the Beach Property. The Plaintiffs contend that they were "forced" to pay ABL $160,000.00 to avoid a foreclosure of the Beach Property, but they make no allegations to support that a foreclosure would not have been sought by ABL absent the Modification Agreement. The court sees no direct link between the Defendant's forgery and the Plaintiffs' payments on the Note.

The United States Bankruptcy Court for the Southern District of Ohio correctly recognizes that Section 523(a)(2)(A)—

> is normally asserted by a creditor claiming that a debt is excepted from discharge due to the fact that the debtor defrauded *that specific creditor*, and that specific creditor loaned money or extended credit to the debtor as a result of the debtor's

10

> fraud or false representation. Under those circumstances, the debtor wrongfully obtains money from the defrauded creditor, and § 523(a)(2) is asserted to preclude the debtor from benefitting from the money wrongfully obtained.

*PaineWebber Inc. v. Magisano (In re Magisano)*, 228 B.R. 187, 192 (Bankr. S.D. Ohio 1998) (emphasis in original). In the present case, the specific creditor who was defrauded by the Defendant's forgery on the Modification Agreement and who extended credit to M&J is ABL, not the Plaintiffs.

In *Magisano*, the debtor had been employed as a broker with PaineWebber, and during his employment, the debtor represented to several banks that a customer had funds in his PaineWebber account far in excess of the actual funds on deposit. *Id.* at 189. This misrepresentation induced the banks to make loans to the customer. *Id.* The banks filed lawsuits against the debtor, the customer, and PaineWebber for losses resulting from defaults under the loans based upon the debtor's misrepresentations, and PaineWebber settled with the banks for payments totaling $330,000.00. *Id.* In a separate action, PaineWebber obtained a judgment against the debtor for this amount. *Id.* at 190. After the debtor filed for Chapter 7 relief, PaineWebber sought to have the debt excepted from the debtor's discharge. *Id.* at 190.

In denying PaineWebber's motion for summary judgment and granting the debtor's cross motion for summary judgment, the *Magisano* court held that—

> [t]he obligation owing from Magisano to PaineWebber is based on contribution, breach of an implied fiduciary duty, and misappropriation of confidential information. PaineWebber has failed to prove a basis for this Court to bootstrap the nature of Magisano's actions against the Banks onto PaineWebber's non-fraud based claims. Nor has PaineWebber provided a basis to allow it to assert the nature of the claims of the Banks by assignment or subrogation. . . Exceptions to discharge are construed narrowly in favor of the debtor, and PaineWebber has not adequately demonstrated that its claim fits squarely within § 523(a)(2).

11

*Id.* at 194-95. Similarly, any claims that the Plaintiffs have against the Defendant for the $160,000.00 paid by them to ABL would be for contribution.[14] The money paid by the Plaintiffs has nothing to do with the Defendant's alleged fraud against ABL, and § 523(a)(2)(A) does not extend to incorporate that fraud for the benefit of the Plaintiffs.

*Fraudulent Inducement*

The Plaintiffs' allege that the Defendant fraudulently induced them to sign the Waiver by falsely representing that he would be responsible for the balance due under the Note after the Plaintiffs' payment of $160,000.00 to ABL and would indemnify Ms. Oglesby. Although this alleged fraud is directed at the Plaintiffs, the inducement occurred several months after the Plaintiffs paid ABL, and any debt of the Defendant to the Plaintiffs for $160,000.00 could not have been obtained as a result of the fraud. The Plaintiffs assert that their execution of the Waiver makes them third party beneficiaries of the Contract between the Defendant and Ms. Oglesby; however, they do not allege any damages for breach of contract for the court to consider for nondischargeability beyond the $160,000.00 incurred by them prior to execution of the Contract.

CONCLUSION

The Amended Complaint, even when viewed in the light most favorable to the Plaintiffs, fails to state a claim for relief under § 523(a)(2)(A) which can be granted by this court. Providing a fresh start for honest debtors is one of the primary purposes of the Bankruptcy Code. *In re Donald*, 343 B.R. 524, 539 (Bankr. E.D.N.C. 2006). The court must interpret narrowly discharge exceptions to protect a debtor's fresh start. *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999) (citing *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d

---

[14] The court notes that the Amended Complaint makes no allegation that the Plaintiffs personally guaranteed the Note, and the facts as presented indicate that their payment was for the benefit of the Trust. The Plaintiffs suggest that the Defendant's refusal to sign the Contract without the Plaintiffs executing the Waiver indicates that they actually have a contribution claim against the Defendant

12

7, 9 (1st Cir. 1994)). In *Rountree*, the Fourth Circuit emphasized the importance of the words "to the extent obtained" contained within § 523(a)(2)(A). To the extent that the Defendant is liable to the Plaintiffs for $160,000.00 paid by them to ABL, this debt was not obtained by the Defendant's alleged false representations or fraud.

In the Amended Complaint, the Plaintiffs request additionally that the court enter judgment against the Defendant for $160,000.00, allocated in the amount of $80,000.00 per Plaintiff; however, a judgment is not necessary or beneficial unless the claims are nondischargeable. Whether the Plaintiffs are allowed dischargeable claims shall be determined in the Defendant's bankruptcy case; now therefore,

It is ORDERED, ADJUDGED, and DECREED as follows:

1. The Motion to Dismiss be, and hereby is, granted; and
2. The Amended Complaint be, and hereby is, dismissed.

**END OF DOCUMENT**